917 F.2d 558
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Gary WEATHERS, Defendant-Appellant.
 No. 90-5616.
 United States Court of Appeals, Fourth Circuit.
 Submitted Aug. 14, 1990.
Decided Nov. 5, 1990.
As Amended Nov. 14, 1990.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk. John A. MacKenzie, Senior District Judge. (CR-89-111-N)
 Robert S. Ricks, Portsmouth, Va., for appellant.
 Henry E. Hudson, United States Attorney, Charles D. Griffith, Jr., Assistant United States Attorney, Norfolk, Va., for appellee.
 E.D.Va.
 AFFIRMED IN PART, VACATED IN PART, AND REMANDED.
 Before ERVIN, Chief Judge, BUTZNER, Senior Circuit Judge, and NICKERSON, United States District Judge for the District of Maryland, sitting by designation.
 PER CURIAM:
 
 
 1
 Gary Weathers appeals his 168 month sentence imposed after his conviction for cocaine possession with intent to distribute in violation of 21 U.S.C. Sec. 841(a)(1). Weathers acknowledges that the district court was correct to hold him responsible for almost one kilogram of cocaine under the federal Sentencing Guidelines but appeals the district court's decision to hold him responsible for an additional 1,911 grams of heroin. Weathers also appeals the district court's decision to increase his offense level by four points for his leadership role in a drug distribution network operating in Portsmouth, Virginia. We find merit in the second contention but not the first, and therefore affirm in part and vacate in part the district court's judgment.
 
 
 2
 * Weathers was a wholesale distributor of heroin in Portsmouth, Virginia. According to the United States probation officer's presentence report, he engaged in illegal narcotics activities for over three years, including sales to at least ten retail distributors, largely on credit. In late July 1989, Weathers arranged for the purchase of approximately one kilogram of cocaine. Weathers acted with Ricky Faulcon and James Small in this transaction. Federal and state law enforcement authorities learned of this transaction through court-authorized wiretaps on telephones used by Weathers, Faulcon, and Small.
 
 
 3
 Weathers pled guilty to possession of 25 ounces of cocaine with intent to distribute. On motion of the government, the court dismissed the remaining counts of the indictment charging him with various drug offenses. The probation officer's report calculated that Weathers was responsible for distributing the equivalent of 2,106 grams of heroin: 195 grams for the kilogram of cocaine and 1,911 grams of heroin. Over Weathers' objection, the district court agreed and established Weathers' base offense level as "32." The probation officer also recommended increasing the offense level by four because of Weathers' leadership role in a distribution network, and again the district court agreed over Weathers' objection. Weathers argued that at most he should be subject to a two level increase. Weathers received a two level decrease for acceptance of responsibility.
 
 
 4
 The district court sentenced Weathers to 168 months, the lowest possible sentence given an offense level of "34" and a criminal history level of "II." If Weathers had been responsible only for the one kilogram of cocaine, his base offense level would have been "26" with a sentencing range of 70-87 months.
 
 II
 
 5
 Weathers argues that the district court erred by aggregating 1,911 grams of heroin with the cocaine to determine the base offense level when there was no indictment or conviction relating to this heroin.
 
 
 6
 Weathers does not contest the accuracy of the presentence report. Instead, he argues that the district court cannot aggregate these drugs in determining his base offense level. Section 1B1.3(a)(2) of the Guidelines provides that the base offense level should include:
 
 
 7
 solely with respect to offenses of a character for which Sec. 3D1.2(d) would require grouping of multiple counts, all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction.
 
 
 8
 United States Sentencing Commission, Guidelines Manual, Sec. 1B1.3(a)(2) (Nov.1989) (hereinafter U.S.S.G.). Weathers makes three arguments for his position.
 
 
 9
 He argues that, by aggregating the additional 1,911 grams of heroin under this provision, the government is avoiding the burden of bringing and proving a conspiracy count. Weathers' theory apparently is that the district court can aggregate quantities of drugs only after a conviction for conspiracy. At least, he argues, the Guidelines are ambiguous and therefore the "rule of lenity" requires a finding in his favor in accordance with Bifulco v. United States, 447 U.S. 381, 387 (1980).
 
 
 10
 Weathers advances some textual support for this argument. At the time, the comments to Sec. 1B1.3 read, in part: "If the conviction is for conspiracy." U.S.S.G. App.C Sec. 78 (p. C.42) (formerly Sec. 1B1.3, comment. (n. 1)) (emphasis added). Additionally, Sec. 3D1.2(d), to which Sec. 1B1.3(a)(2) makes reference, is an application of the rule in the immediately previous section. That previous section, Sec. 3D1.1, applies "[w]hen a defendant has been convicted of more than one count." U.S.S.G. Sec. 3D1.1 (emphasis added). Weathers cites United States v. Restrepo, 883 F.2d 781 (9th Cir.1989), which held that the Guidelines establish the base offense level by reference to only those drugs involved in the offense of conviction.
 
 
 11
 There are two fatal flaws in Weathers' argument. The Ninth Circuit withdrew its opinion in Restrepo and issued a new opinion agreeing with every other circuit decision on point: a district court may aggregate all drugs involved in the same course of conduct or scheme in determining the base offense level regardless of whether or not there are convictions or indictments relating to these various drugs. United States v. Restrepo, 903 F.2d 648, 651-53 (9th Cir.1990); see, e.g., United States v. White, 888 F.2d 490, 496-98 (7th Cir.1989); United States v. Smith, 887 F.2d 104, 106-08 (6th Cir.1989); United States v. Mann, 877 F.2d 688, 690 (8th Cir.1989); United States v. Guerrero, 863 F.2d 245, 247-50 (2d Cir.1988). This circuit in United States v. Williams, 880 F.2d 804, 805-06 (4th Cir.1989), agreed that the Guidelines allow this type of aggregation. As the court persuasively argued in White, the use of the subjunctive "would" in Sec. 1B1.3(a)(2), expressing a contrary-to-fact condition, effectively precludes Weathers' argument regarding Secs. 3D1.1, .2(d). See 888 F.2d at 497.
 
 
 12
 Additionally, the Sentencing Commission has amended the commentary to Sec. 1B1.3 by deleting the text Weathers cites and inserting "whether or not charged as a conspiracy." U.S.S.G. Sec. 1B1.3, comment. (n. 1). Weathers argues that application of the amended comments to him would violate the Ex Post Facto Clause of the United States Constitution, U.S. Const. art I, Sec. 9, cl. 3.
 
 
 13
 The stated purpose of the amendment was to clarify the Guidelines, not to make substantive changes. U.S.S.G.App.C Sec. 78 (p. C.43). Previously we have held that subsequent amendments clarifying the Guidelines may be useful in interpreting the Guidelines as they existed at the time of the offense. United States v. Deigert, --- F.2d ---- (4th Cir.1990). The correct interpretation of Sec. 1B1.3(a)(2) always has been that sentencing courts can aggregate quantities of illegal drugs even if there is no indictment, conviction, or arrest for conduct involving those drugs. Therefore, the "rule of lenity" does not apply and the Ex Post Facto Clause argument does not support Weathers' interpretation of the Guidelines.
 
 
 14
 Weathers argues that holding him responsible for drug transactions occurring prior to the effective date of the Guidelines independently violates the Ex Post Facto Clause, U.S. Const. art I, Sec. 9, cl. 3. He relies on Miller v. Florida, 482 U.S. 423 (1987), in which the Supreme Court held that application of a guideline increasing a presumptive sentence after the commission of a crime violates the Ex Post Facto Clause.
 
 
 15
 Two other circuits have considered and rejected this same argument. United States v. Ykema, 887 F.2d 697, 700 (6th Cir.1989); United States v. Allen, 886 F.2d 143, 145-46 (8th Cir.1989). We agree with these circuits that the Guidelines are analogous to the repeat-offender statutes held not to violate the Ex Post Facto Clause in Gryger v. Burke, 334 U.S. 728, 732 (1948). Aggregating drugs involved in illegal transactions prior to the effective date of the Guidelines does not violate the Ex Post Facto Clause if, as here, the offense of conviction occurred after their effective date.
 
 
 16
 Weathers' final argument seems to be that the other drug transactions did not occur in the "same course of conduct or common scheme or plan" as his conviction for possession of cocaine with intent to distribute. The relationship between these drug deals is a question of fact, and the district court's finding that they were related is not clearly erroneous.
 
 III
 
 17
 Weathers makes virtually the same arguments regarding the four level increase in the offense level because of his leadership role in several drug distributions. Here, however, Weathers stands on firmer textual ground. The Guidelines state:
 
 
 18
 Based on the defendant's role in the offense, increase the offense level as follows:
 
 
 19
 (a) If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels.
 
 
 20
 * * *
 
 
 21
 * * *
 
 
 22
 (c) If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) ..., increase by 2 levels.
 
 
 23
 U.S.S.G. Sec. 3B1.1 (emphasis added). The commentary defines a "participant" as "a person who is criminally responsible for the commission of the offense." U.S.S.G. Sec. 3B1.1, comment. (n. 1) (emphasis added).
 
 
 24
 The probation officer based his recommendation of a four level increase on Weathers' role as the organizer of a conspiracy, composed of more than five, that distributed a kilogram of cocaine and at least 1,911 grams of heroin from 1988 to 1989. The district court accepted this recommendation. Weathers objected, arguing that the offense of conviction involved only his two codefendants, Faulcon and Small.
 
 
 25
 The government responds that since Weathers did not contest the district court's factual findings, as set forth in the probation officer's report, this court must affirm unless the findings are clearly erroneous.
 
 
 26
 A reviewing court must accept the district court's factual findings about the defendant's role in the offense unless they are clearly erroneous. United States v. Daughtrey, 874 F.2d 213, 218 (4th Cir.1989). But the district court's interpretation of the Guidelines in reaching its conclusion about the defendant's role raises a question of law for de novo review. United States v. Gordon, 895 F.2d 932, 934-36 (4th Cir.1990); Daughtrey, 874 F.2d at 217.
 
 
 27
 The issue here is not a factual one. Weathers never has contested the facts recited in the presentence report. The legal issue is whether a defendant's role as an organizer is based on his conduct with respect to the offense of conviction or on his conduct with respect to related transactions for which he has not been convicted.
 
 
 28
 Although we have not addressed this issue, at least four circuits have examined the question and all read the language of Sec. 3B1.1 as permitting an increase in the defendant's offense level only if the defendant was in a management position with respect to the offense of conviction. United States v. Barbontin, 907 F.2d 1494, 1498 (5th Cir.1990); United States v. Pettit, 903 F.2d 1336, 1340-41 (10th Cir.1990); United States v. Tetzlaff, 896 F.2d 1071, 1074-75 (7th Cir.1990); United States v. Williams, 891 F.2d 921, 924-26 (D.C.Cir.1989). Additionally two other circuits have held that the identical language in Sec. 3B1.2 allows decreasing the offense level only if the defendant was a minimal or minor participant in the offense of conviction, not the overall scheme. United States v. Zweber, --- F.2d ---- (9th Cir.1990); United States v. Williams, 879 F.2d 454, 458 (8th Cir.1989).
 
 
 29
 Section 1B1.3(a) establishes the general rule that collateral conduct may be taken into account "[u]nless otherwise specified." Section 3B1.1 specifies otherwise. By its terms, the only conduct pertaining to the defendant's role that the district court may use to increase the offense level is conduct relating to the offense of conviction.
 
 IV
 
 30
 We affirm the inclusion of 1,911 grams of heroin in Weathers' base offense level but vacate the sentence and remand for reconsideration of Weathers' role in the offense of conviction. On remand the district court can determine if there were sufficient "participants" in the offense for which Weathers was convicted to impose a four level increase. Alternatively, the district court is free to determine if the offense of conviction was "otherwise extensive" or if a two level increase is appropriate.
 
 
 31
 AFFIRMED IN PART, VACATED IN PART, AND REMANDED